UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NATHANIEL CRAWFORD,<br><br>Defendant. | 4:22-CR-40052-KES<br><br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING CRAWFORD'S MOTION TO SUPPRESS** |

Defendant, Nathaniel Crawford, is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Docket 1. Crawford moves to suppress all evidence obtained during a search of his vehicle, as well as the statements he made during and after the search, arguing that this evidence was obtained in violation of the Fourth Amendment to the United States Constitution. Docket 31; Docket 32 at 6. The motion was referred to a United States magistrate judge for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Veronica Duffy recommended that Crawford's motion to suppress be denied. Docket 40 at 20. Crawford objects to the Magistrate Judge's Report and Recommendation. Docket 42.

**Legal Standard**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's

recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980) (holding dispositive motions under 28 U.S.C. § 636(b)(1) are subject to de novo review by the district court). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## Factual Background

According to the testimony given and the exhibits introduced at the evidentiary hearing, the pertinent facts are as follows:

On February 5, 2022 at approximately 8:00 p.m., the Sioux Falls Police Department received reports of an argument between a man and a woman taking place on the 300 block of North Spring Avenue. Docket 41 at 7-8. Multiple callers reported that the man was outside and threatening to "shoot someone's house." Docket 37 at 9. The man then left in his vehicle, reported to be a red Trailblazer or Cherokee. *Id.* at 9-10. The contents of these calls, along with all other relevant calls received that night, were available to officers through the Metro Communications command log (CAD). Docket 41 at 8.

Officer Michelle Smith responded to the call and arrived at the residence at approximately 8:14 p.m., where she spoke with the woman involved in the

incident, Christina Bryant. Docket 41 at 11; Exh. 1 at 20:15:52-22:25.[1] Bryant told Officer Smith that Nathaniel Crawford, her ex-boyfriend, had been at the residence arguing and making threats. Docket 41 at 11-12. At that time, Bryant reported that she did not think that Crawford would follow through on his threats and that she did not know him to carry firearms. *Id.* at 12. But Bryant also mentioned an incident that had occurred on January 28, 2022 in which Crawford struck Bryant with a metal pipe. *Id.* at 11; Docket 32 at 2; Docket 33 at 2. Officer Smith told Bryant to call the police if Crawford returned to the apartment. Docket 41 at 12.

Officer Smith returned to her vehicle several blocks away and located a bulletin indicating that Crawford was wanted for aggravated assault against Bryant from the January 28 incident. *Id.* at 13-14. The bulletin noted that Crawford may be in a red Chevy Trailblazer. *Id.* at 14.

Approximately twenty minutes after Officer Smith left the scene, at 20:37:48, Bryant called 911. Docket 37 at 9. Bryant reported to dispatch that Crawford was right outside her door with a gun. *Id.* In response to the call, Officer Smith returned to the apartment complex. Docket 41 at 13-14. Other officers also arrived at the scene and, with Officer Smith, looked for Crawford. Exh. 1 at 20:39:33-41:23. Officer Smith also spoke with Bryant, who was uninjured and who stated that Crawford left in a red Trailblazer wearing blue jeans and a white t-shirt. Docket 41 at 14-15; Exh. 1 at 20:41:30. Bryant did not know where Crawford had gone. Docket 41 at 15.

---

[1] Exhibit 1 is Officer Smith's body camera footage from February 5, 2022. Docket 36.

Officer Smith radioed to nearby officers that there was a bulletin authorizing Crawford's arrest, that he was reported to have been back at the Bryant's apartment with a firearm, and that he was in a red Chevy Trailblazer. *Id.* Within a few minutes, Sergeant Harris radioed that he had located Crawford's vehicle at the northwest corner of the parking lot for the Minnehaha County administration building, just a few blocks from Bryant's apartment complex. Docket 41 at 15-16, 99, 107.

Officers VanVoorst and Harris arrived first at the scene. *Id.* As the officers pulled into the parking lot, Crawford finished parking and exited his vehicle. Exh. A at 20:42:38.[2] Officer VanVoorst exited his vehicle and took out his dog, Hugo. Docket 41 at 99-100. Hugo is a dual-purpose dog. *Id.* at 106. He is trained in the apprehension of subjects, as well as detecting narcotics. *Id.* Officer VanVoorst got Hugo out of the patrol vehicle in case he was needed to apprehend Crawford. *Id.* at 107. When Crawford complied with commands that were issued by officers, Officer VanVoorst returned the dog to his patrol vehicle. *Id.* at 100-01, 110-11.

Officers Robert Olson, Jason Banik, and Samual Buhr all arrived on scene at 20:43:30. Exh. 2 at 20:43:30[3]; Exh. 3 at 20:43:30[4]; Exh. C at

---

[2] Exhibit A is Officer VanVoorst's body camera footage from February 5, 2022. Docket 36.
[3] Exhibit 2 is Officer Olson's body camera footage from February 5, 2022. Docket 36.
[4] Exhibit 3 is Officer Buhr's body camera footage from February 5, 2022. Docket 36.

4

20:43:30[5]. At that time, Crawford was outside his vehicle and complying with commands, but he had not yet been handcuffed. Exh. C at 20:43:30. Officer Banik helped handcuff Crawford while Officers VanVoorst, Olson, and Buhr visually inspected Crawford's vehicle to see if any other persons were inside. Exh. 2 at 20:44:49; Exh. C at 20:43:33. When they saw the vehicle was unoccupied, they gave the other officers an "[a]ll clear." Docket 41 at 51.

After handcuffs were placed on Crawford, an officer asked him if he had any weapons on him. Exh. C at 20:43:33. He said that he did not. *Id.* Officer Buhr approached and asked Crawford, "Where's the gun at, man?" *Id.* at 20:45:31; Exh. 3 at 20:45:31. Crawford denied having a firearm. *Id.* Officer Buhr then asked Crawford for consent to search the vehicle for firearms, but Crawford said, "no." Exh. 2 at 20:45:44.

After Crawford declined to consent to the search, Officer Olson remarked that Crawford's vehicle smelled of cannabis and they could probably search the vehicle based on that fact. *Id.* at 20:45:52. At the hearing in this matter, Officers Vanvoorst and Buhr also testified that they smelled marijuana emanating from the driver's side of Crawford's vehicle. Docket 41 at 79, 108. Officer Buhr asked Crawford if he had a medical marijuana card, to which Crawford replied "no." Exh. 2 at 20:46:07. Two other cars were parked near Crawford's vehicle on the passenger side. Exh. A at 20:44:40. No other vehicles were visible nearby. *Id.* Officer Olson testified it might be possible that the

---

[5] Exhibit C is Officer Banik's body camera footage from February 5, 2022. Docket 36.

5

smell emanated from one of the other cars, but that the smell became "exponentially" stronger next to Crawford's vehicle. Docket 41 at 66.

Officer Olson approached Crawford's vehicle and began peering through the closed windows. Exh. 2 at 20:46:05. Officer Olson remarked that he saw a wooden item in the slightly open center consul and speculated that it was the hand grip of a firearm. *Id.* at 20:46:20. He called Officer Buhr over to confirm his observation. Officer Buhr agreed it looked like a gun. *Id.* at 20:46:32. Other officers can be heard discussing that the smell of marijuana gave them probable cause to search. *Id.* at 20:46:41.

Officer Smith, at this point on the scene, approached Crawford to speak to him. Exh. 1 at 20:46:47. While Officer Smith told Crawford that he was under arrest for aggravated assault, another officer came up and took Crawford's keys from his pocket. *Id.* at 47:12.

Officer Olson used the keys from Crawford's pocket to open the driver's side door to Crawford's vehicle and the officers confirmed there was a gun in the console. Docket 41 at 45-46. Officer Olson asked Officer Buhr to take photos of the console with the gun in place. *Id.* at 54. The officers lifted the console lid to view the gun; they replaced the lid as it was originally and then took the photos. *Id.* The officers then took the car from the gun and determined that it was a .38 special that was loaded with five rounds of ammunition. *Id.* at 78.

Officer Banik conducted a pat-down search of the exterior of Crawford's person and then placed him in the back seat of his patrol vehicle. *Id.* at 116-

17. Officer Smith began to read Crawford his *Miranda* rights, but when he interrupted her, she stopped and did not proceed with questioning. *Id.* at 16. Crawford was then transported to jail. *Id.* at 117.

    At 20:52:53 Officer Smith called Bryant and questioned her about the second time Crawford made threats at her apartment. Exh. 1 at 20:52:53. Bryant told Officer Smith that she did not see a gun in Crawford's possession, but speaking to him through the door of her apartment, she heard him accuse her of pointing a gun at his sister and heard a "click-click," which she presumed to be a firearm. *Id.* at 20:54:06-54:20. Bryant said Crawford made her afraid. *Id.* at 20:55:48.

    After this phone call with Bryant, Officer Smith concluded she had probable cause to arrest Crawford for domestic violence intimidation. She conveyed this information to the other officers in the parking lot and asked them to place the gun into evidence under the new charge rather than the January 28 charge. Exh. 1 at 21:01:02. She also called the officers who were taking Crawford to the jail to be booked and let them know she was opening a new case for domestic violence intimidation. *Id.* at 21:02:05. She also stated another charge for being a felon in possession of a firearm might be added, depending on what was discovered regarding Crawford's criminal history. *Id.*

    When Officer Banik booked Crawford into the jail, he did not request that any blood or urine be collected to be tested for drugs. Docket 41 at 118.

7

**Discussion**

Crawford objects to three of the magistrate judge's factual findings and three of the magistrate judge's legal conclusions. Docket 42 at 2-7. Factually, he objects to the description of Officer VanVoorst's arrival on the scene, to the finding that officers saw the grip of a firearm in the center console of Crawford's vehicle, and to the finding that officers smelled marijuana near Crawford's vehicle. *Id.* at 2-3. Legally, he objects to the conclusion that the automobile exception justified a search of the vehicle, that the plain view exception justified a search of the vehicle, and that that his statements are not fruit of the poisonous tree. *Id.* at 4-6. Crawford also highlights his agreement with the magistrate judge's finding that the search incident to arrest exception to the warrant requirement does not apply in this case. *Id.* at 6.

**A. Crawford's Factual Objections**

   **1. Officer VanVoorst's Arrival at the Traffic Stop**

Crawford objects to the magistrate judge's description of law enforcement's original encounter with his vehicle. The Report and Recommendation describes Officer Harris arriving first at the scene and Officer VanVoorst arriving shortly afterward. Docket 40 at 4. Crawford argues that "[c]ontrary to his testimony, Officer VanVoorst's body camera indicates that when he arrived on scene, Crawford's vehicle was already parked, and Officer VanVoorst was the first to encounter him." Docket 42 at 2.

This court has reviewed both the video footage and Officer Vanvoorst's testimony and found both comport with Crawford's assertion that Officer

VanVoorst was first on the scene. Officer VanVoorst agreed that he was "pretty much one of the first on scene" and that "the vehicle was parked, and Mr. Crawford was then getting out of the vehicle." Docket 41 at 99-100. The video evidence similarly shows Officer VanVoorst arriving at the scene when no other police cars are visibly present. Exh. A at 20:43:02-43:10. Officer Harris arrived at the scene only seconds later, while Officer VanVoorst was exiting his patrol vehicle to remove his K-9. *Id.* at 20:43:02-:44:35.

Based on this evidence, the court finds that Officer VanVoorst was first on the scene, followed shortly by Officer Harris. At the time that Officer VanVoorst arrived, Crawford was exiting his vehicle, a red Chevy Trailblazer. Officers VanVoorst and Harris gave Crawford verbal commands only after Crawford had left his own vehicle. The court sustains Crawford's first objection.

### 2. Officers' Reports of Seeing the Grip of a Firearm in the Center Console

The court next considers Crawford's objection to the magistrate judge's factual finding "that officers saw a grip of a firearm in the center console of the vehicle." Docket 42 at 2. Crawford contends that the magistrate judge relied solely on the statements of Officer Olson and Officer Buhr made at the scene and during the evidentiary hearing. *Id.*; Docket 40 at 7. Video and photographic evidence, Crawford argues, demonstrate that the grip could not have been viewed as claimed and "raise serious questions about" the officers' testimony. Docket 42 at 3.

Though the court is entitled to "give weight to the magistrate judge's credibility determination," the magistrate judge did not make a specific finding

9

of credibility on this issue. *U.S. v. Martinez-Amaya*, 67 F.3d 678, 681 (8th Cir. 1995). The Report and Recommendation does not discuss the photographic or video evidence specifically, but finds that Crawford's suggestion "that the officers did not and could not possibly recognize the item they viewed through the windows of Mr. Crawford's vehicle as a gun grip . . . is defeated by the evidence received at the hearing where Officers Olson and Buhr both testified the item was clearly and immediately recognizable to them as a gun grip." Docket 40 at 11. This court has reviewed the photographic and video evidence, as well as the testimony from the hearing, and finds that officers were able to view the grip of the handgun and to identify it as a wooden handle.

At the hearing, Officer Olson testified that he "observed a wooden handgrip that [he] believed to belong to a handgun" through the two-inch gap in the center console. Docket 41 at 41. Officer Buhr also testified at the hearing and said that he "agreed with [Officer Olson] that it did appear to be the pistol grip of a firearm." *Id.* at 76. These statements align with those from the video footage. Officer Olson first states that he sees the handle, and then calls over Officer Buhr to confirm. Officer Olson asks, "In that console, see the wooden grip?" Officer Buhr agrees that it is consistent with a gun grip. This description accurately describes the gun that was eventually discovered. Because the officers had no way to know that the gun had a wooden handle and Crawford provides no explanation for how the officers would have obtained that knowledge absent observation, the court finds that the officers viewed the gun grip. The court overrules Crawford's second objection.

10

### 3. Officers' Reports of Smelling Marijuana

Crawford also challenges the magistrate judge's finding that the officers smelled marijuana emanating from his vehicle. Crawford argues that "[t]he Magistrate Judge did not give sufficient weight to the inconsistencies in the officers' statements, the timing of the first mention of the smell of marijuana, and Officer Buhr's testimony that he 'was advised by another officer that he had smelled the odor of marijuana coming from the vehicle.'" Docket 42 at 3. After careful consideration of the record, the court denies Crawford's objection and finds that the officers smelled marijuana emanating from the vehicle. Though Crawford correctly points out that Officer Buhr admitted that he did not recall smelling marijuana when he first encountered the vehicle, Crawford fails to acknowledge that Officer Buhr's first encounter with the vehicle was cursory. *See* Exh. 3 at 20:44:49. He was performing a brief visual inspection to ensure that no one else was present in the vehicle. Docket 41 at 41. As such, that he did not pay close attention to or later remember specific odors is not unusual. The court also finds that the timing of the discovery of the odor is not suspicious causing the officers' testimony to be discredited. Though their comments came after Crawford's refusal of consent to search the vehicle, the events of the stop progressed quickly, and the officers did not have a chance to

11

inspect the vehicle until Crawford was already in custody and being questioned by Officer Smith. *See generally* Exh. 3. Crawford's objection is therefore denied.

### B. Crawford's Legal Objections

#### 1. The Automobile Exception

"The Fourth Amendment provides in relevant part that the 'right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' " *Collins v. Virginia*, 138 S.Ct. 1663, 1669 (2018). The usual rule is that a reasonable search is one supported by probable cause and for which a warrant has been issued. *California v. Carney*, 471 U.S. 386, 390 (1985). The Supreme Court, however, has recognized exceptions to this rule when a reasonable search may occur without a warrant. *Id.* At issue in this case, "[t]he [Supreme] Court has held that the search of an automobile can be reasonable without a warrant." *Collins*, 138 S.Ct. at 1669. "[O]fficers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Id.* at 1670.

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Kleinholz v. United States*, 339 F.3d 674, 676 (8th 2003) (citing *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000)). Probable cause is "not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). The court need not, and indeed must not, inquire into the subjective intentions

12

of officers in making the determination for probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind . . . is irrelevant to the existence of probable cause.") Instead, to determine the existence of probable cause, the court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "Probable cause may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if, as here, some degree of communication exists between them." *United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000) (citing *United States v. Twiss*, 127 F.3d 771, 774 (8th Cir. 1997).

The magistrate judge found that the automobile exception to the warrant requirement applied in this case because police officers had two bases for probable cause: their view of the gun grip in the center console of Crawford's vehicle and the smell of marijuana emanating from the vehicle. Docket 40 at 11-17. Crawford objects to both findings and argues that officers did not have probable cause to search his vehicle. Docket 42 at 4-6.

### a. Did the Viewing of the Gun Grip Give Rise to Probable Cause?

The magistrate judge's Report and Recommendation found that officers had probable cause to search Crawford's vehicle based on their view of the gun grip in the center console. Docket 40 at 13-14. Combined with "the credible reports to dispatch, the information relayed from dispatch at 20:39:17 that Mr.

13

Crawford had returned to Ms. Bryant's apartment a second time with a gun . . . [and] the fact that only a few minutes had elapsed between Mr. Crawford's second visit to Ms. Bryant's apartment" the magistrate judge held that the view of the gun grip could lead a reasonable officer to believe that there was a fair probability that evidence could be found in the vehicle. Docket 40 at 13 (internal citation omitted).

Crawford objects and argues that, "even if law enforcement had recognized a firearm, they did not have probable cause to believe that a crime had been committed with the firearm." Docket 42 at 5. Crawford contends that Officer Smith did not believe that she had probable cause to "arrest or charge Crawford with any new crimes based on the events of February 5." *Id.* He states that Officer Smith only had " 'vague' reports of threats and that Bryant reported that she was 'not really afraid[]' " and that no one confirmed that they saw a firearm. *Id.* (citing Docket 41 at 26).

The question before the court is whether the officers, based on the information available to them at the time of the search, could reasonably believe that there was a "fair probability" that evidence of a crime could be found in Crawford's vehicle. Though Crawford asserts that the magistrate judge was incorrect in "finding that . . . law enforcement had sufficient evidence that Crawford had a firearm that night and threatened to use it to shoot Ms. Bryant[,]" Crawford rests the majority of his argument on Officer Smith's subjective perception of probable cause to arrest. Docket 42 at 5. Because an officer's subjective opinion on the existence of probable cause is not

14

determinative, the court instead reviews what information was available to officers at the time of the search from the perspective of a hypothetical reasonable officer. *See Devenpeck*, 543 U.S. 153.

Officers knew at the time of the search that multiple callers had reported that Crawford had a firearm and was threatening to use that firearm to shoot Bryant. Docket 37 at 9-10. Though the first of these calls was from an anonymous neighbor of Bryant, Bryant is personally familiar with Crawford and confirmed details of the call when talking to Officer Smith. Exh. 1 at 20:15:52-20:22:25. These details were again corroborated by the reports of the January 28 incident and by police who spotted Crawford. Docket 41 at 82; *see United States v. Roberts*, 787 F.3d 1204 (2015) (holding that a corroborated tip can constitute probable cause). Bryant also called the police herself to report that Crawford had returned and again threatened to shoot her. Docket 37 at 9. Though Bryant first told officers that Crawford was not known to carry firearms, she told police on a later call that Crawford was armed. Docket 37 at 9; Exh. 1 at 20:52:00. This difference in her reports implies that she had reason to change her mind about whether Crawford was armed. That Bryant later clarified that she did not actually see the gun is irrelevant, because officers at the time could reasonably believe that her information was reliable. Exh. 1 at 20:52:00.

When considered together, this information could lead a reasonable officer to believe that Crawford had a gun and had used it to threaten Bryant in violation of state law. Because the report came only three minutes before

15

officers arrested Crawford, a reasonable officer could also believe that the weapon would still be either on Crawford's person or in his vehicle. Thus, the officers had probable cause upon viewing a wooden handle in the center console of Crawford's vehicle to search the vehicle for a firearm. The court overrules this objection.

### b. Did the Odor of Marijuana Give Rise to Probable Cause?

Crawford also objects to the Magistrate Judge's finding that law enforcement officers had probable cause to search his vehicle based on the smell of marijuana. The Magistrate Judge relied on *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989), *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000), and *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) to establish that the smell of marijuana can give rise to probable cause for the search of a vehicle. *See* Docket 40 at 15-17. Crawford argues that these cases are not controlling because "each . . . is unique on its own facts" and "law enforcement [in those cases] observed other factors . . . that were not present in this case." Docket 42 at 6. The other factors cited by Crawford, however, such as the fact that the "vehicle just emerged from another state, [the] strong smell of air freshener, [or the defendant] lighting a cigarette to cover up the smell[,]" are not dispositive. *Id.* In fact, none of them overcome the well-established principle that the smell of marijuana alone can give rise to probable cause to search a vehicle. *See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020); *United States v. Mayfield*, 678 F. App'x 437, 439 (8th Cir. 2017).

16

Here, multiple officers reported the smell of marijuana, and Crawford admitted that he did not possess a medical marijuana card. Exh. 2 at 20:45:44-20:46:07. Crawford does not point to any facts that would detract from the logical conclusion by officers that there may be marijuana in the car, in violation of state and federal law. Thus, the court denies Crawford's objection.

### 2. The Plain View Exception

In his next objection, Crawford contests the magistrate judge's finding that the plain view exception to the warrant requirement applies. Docket 42 at 6. For the plain view exception to the warrant requirement to apply, (1) the item seized must be in plain view, (2) the officer viewing the item must be in his vantage point lawfully, and (3) the incriminating nature of the item must be immediately apparent. *Horton v.* California, 496 U.S. 128, 136-37 (1990). The magistrate judge found that the warrantless search of Crawford's vehicle was justified under this exception because law enforcement saw the gun grip while standing outside the vehicle and immediately recognized it as evidence of his earlier unlawful behavior. Docket 40 at 8. Crawford disputes that the gun was visible and asserts that, if it was, "its incriminating nature was not immediately apparent." Docket 42 at 6.

This court has already found that the gun was partially visible. Statements by officers on the scene corroborate their testimony at the evidentiary hearing that they saw a wooden handle consistent with a gun grip in the center console of Crawford's vehicle. But officers' view of the grip was

highly limited and identifying details were likely impossible to view with complete certainty. And complete certainty is not required for an item to be "immediately apparent" under the plain view exception. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) (quoting *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990)). Instead, "[t]he 'immediately apparent' requirement means that officers must have 'probable cause to associate the property with criminal activity.' " *Id.* Because, as discussed above, the reports by Bryant and the anonymous caller already gave rise to probable cause that Crawford was in possession of a gun and that the gun was tied to criminal activity, partial view of the gun grip in the center console justifies the search under the plain view exception. Crawford's objection is denied.

### 3. Search Incident to Arrest

Crawford highlights his agreement with the magistrate judge's finding that the warrantless search was not justified by the search incident to arrest exception to the warrant requirement. The exception does not apply because it requires either that the defendant be unrestrained or that the officer have reason to believe that there may be evidence of the offense of arrest within the vehicle. *See Arizona v. Gant*, 556 U.S. 332, 343-44 (2009). Here, Crawford was in handcuffs and the incident of arrest was an assault on January 28; officers had no reason to expect that they would find evidence of that offense five days later during the search at issue. Exh. C at 20:43:33; Docket 41 at 11. As such,

this court affirms the finding of the magistrate judge that search incident to arrest does not apply in this case.

### 4. Crawford's Statements are Fruit of the Poisonous Tree

Because this court finds that there was no Fourth Amendment Violation, and thus no "fruit of the poisonous tree," Crawford's objection is denied.

### CONCLUSION

The court adopts Magistrate Judge Duffy's recommendation as modified and denies Crawford's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 40) denying Crawford's motion to suppress is adopted as modified by this opinion. The motion to suppress (Docket 31) is denied.

Dated October 18, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE